UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACEY N. THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS HERERRA,<br><br>Defendant. | Case No. 17-cv-05141-WHO<br>Case No. 17-cv-05163-WHO<br>Case No. 17-cv-05843-WHO<br><br>**ORDER REQUIRING PLAINTIFF TO FILE AN AMENDED COMPLAINT** |

Pro se plaintiff Tracey N. Thompson has filed three almost identical cases against Dennis Hererra (the City Attorney for San Francisco) stemming from an injury she suffered on a bus in San Francisco.

In November 2017, I adopted the Report and Recommendations dismissing Thompson's first two cases (17-cv-05141 and 17-cv-05163) because she failed to allege a claim under federal law and failed to allege any facts showing I had jurisdiction over any state law claim. I gave Ms. Thompson until December 14, 2017 to file amended complaints if she could fix those problems. On December 18, 2017, I adopted another Report and Recommendation and dismissed Thompson's third case (17-cv-05843) for the same reasons. I gave Ms. Thompson until January 17, 2018 to file an amended complaint in any or all of her three cases, giving her a final opportunity to allege a violation of federal law or allege that I have jurisdiction over her state law claims. I cautioned her that if she did not file an amended complaint, her cases will be dismissed for failure to prosecute.

As of today's date, Ms. Thompson has not filed an amended complaint in any of her three cases or otherwise attempted to fix the problems. Instead, on January 12, 2018, Thompson filed short, one-line requests in each of her cases asking the court to "reschedule" the case management

conferences and "recalendar" her case. However, each of her cases has been *dismissed* for failure to state a claim. There is nothing to reschedule or recalendar.

As Ms. Thompson is pro se, I will give her one more chance. As explained in each of the Reports and Recommendations adopted by me in her cases (which are attached again here), Thompson has not alleged any facts to show that she has asserted is attempting to assert a violation of a *federal* law. In addition, Thompson cannot bring any state law claims (for personal injury or breach of contract) in federal court unless she can allege diversity jurisdiction; in other words that she and Herrera (and any other defendant) are residents of *different* states and that her damages exceed $75,000. If Thompson cannot allege a violation of a federal law or allege diversity jurisdiction, she cannot litigate her claims in federal court.

Therefore, Thompson is given until **February 19, 2018** to file amended complaints in one or more of her cases alleging a violation of a federal law or alleging facts showing diversity jurisdiction. If she does not do so, all three of her cases will be dismissed for failure to prosecute. Fed. Rule Civ. Proc. 41(b).

**IT IS SO ORDERED.**

Dated: January 19, 2018

William H. Orrick
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| TRACEY N. THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS HERRERA,<br><br>Defendant. | Case No. 17-cv-05141-LB<br><br>**ORDER DIRECTING REASSIGNMENT; REPORT AND RECOMMENDATION TO DISMISS THE COMPLAINT** |
| TRACEY N. THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS HERRERA,<br><br>Defendant. | Case No. 17-cv-05163-LB |

**INTRODUCTION**

The plaintiff Tracey N. Thompson, who is representing herself and proceeding *in forma pauperis*, sued Dennis Herrera, the City Attorney of San Francisco, in two similar cases alleging injury to her ankle that she apparently sustained on a wheelchair lift on a bus and claiming that wheelchair lifts on buses need to be federally mandated.[1] She consented to magistrate-judge

---

[1] Compl. – ECF No. 1 at 1, *Thompson v. Herrera*, No. 17-CV-05141; Compl. – ECF No. 1 at 1 in *Thompson v. Herrera*, No. 17-CV-05163. Record citations refer to material in the Electronic Case File

jurisdiction in one case and declined jurisdiction in the other.[2] The court related the cases.[3] *See* Civ. L.R. 3-12. The court directs the Clerk of Court to reassign the cases to a district judge and recommends that the newly assigned judge dismiss the complaints with leave to amend because Ms. Thompson fails to plead a plausible claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**STATEMENT**

On August 15, 2017, Ms. Thompson filed a complaint entitled: "All Buses Need Federal Mandated Wheelchair Lifts to Avoid Smashing a Woman's Foot and Ankle."[4] She alleges the following:[5]

> Wheelchair lifts need to be federally mandated. The reason is they smashed Tracey N. Thompson's foot, back of ankle and injured her leg's tendon. She went to the emergency room and got six stitches and went through a lot of pain.
>
> The wheelchair lifts have two yellow bars on each side which do not move. They stay stationary and trap the person into three moving shelves of strong metal on the buses moving floor. It then traps the foot and ankle inside a four foot long razor sharp blade which folds over the foot.
>
> The bus wheelchair lifts need to be federally mandated. They can hurt a person's foot and leg (tendon) really bad. And cause a deep severe laceration.

On September 5, 2017, Ms. Thompson filed another complaint entitled "Wheelchair Lifts On Buses Need to Be Federally Mandated."[6] She alleges the following:[7]

> Tracey N. Thompson; experienced a horrible personal injury incodent [*sic*]. A wheelchair lift flapped into the back of her left ankle. Ambulance Report carried her to Emergency Room. Bus driver told her it[']s ok to ride the ramp up onto the bus. Then it collapsed and folded three ways over her foot and ankle. Pictures of the wheelchair lift available on request. It was a painful experience for Tracey. She

---

("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents. The complaints spell the City Attorney's last name as "Hererra;" the court uses the correct "Herrera."

[2] Consent Form – ECF No. 4, *Thompson v. Herrera*, No. 17-CV-05163; Declination – ECF No. 9, *Thompson v. Herrera*, No. 17-CV-05141.

[3] Order – ECF No. 6, *Thompson v. Herrera*, No. 17-CV-05163 and ECF No. 12, *Thompson v. Herrera*, No. 17-CV-05141.

[4] Compl. – ECF No. 1, *Thompson v. Herrera*, No. 17-CV-05163.

[5] *Id.*

[6] Compl. – ECF No. 1, *Thompson v. Herrera*, No. 17-CV-05141.

[7] *Id.*

had six stiches in her left ankle. Bent tendon – a lot of pain.

# GOVERNING LAW

A complaint filed by any person proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) is subject to a mandatory and *sua sponte* review and dismissal by the court to the extent that it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000). Section 1915(e)(2) mandates that the court reviewing an *in forma pauperis* complaint make and rule on its own motion to dismiss before directing the United States Marshal to serve the complaint pursuant to Federal Rule of Civil Procedure 4(c)(3). *Lopez*, 203 F.3d at 1127. "The language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Rule 12(b)(6) and § 1915(e)(2)(B), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal citations omitted). The complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When dismissing a case for failure to state a claim, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (internal quotations and citation omitted).

**ANALYSIS**

Ms. Thompson alleges a personal injury. Absent diversity jurisdiction, a personal-injury claim ordinarily is filed in state court. *See, e.g.*, *Siler v. Dillingham Ship Repair*, 288 F. App'x 400 (9th Cir. 2008) (mem.). To invoke diversity jurisdiction, the complaint must allege that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). When a case involves two citizens of California, there is no diversity jurisdiction. *Sinclair v. Boughton*, 419 F.2d 129, 130 (9th Cir. 1969) (per curiam).

Another possibility is that Ms. Thompson tries to plead a federal claim predicated on a disability. (She does not reference the Americans with Disabilities Act ("ADA").) Title II of the ADA establishes standards for public transportation provided by public entities. *Boose v. Tri-County Metro. Transp. Dist. of Oregon*, 587 F.3d 997, 1001 (9th Cir. 2009) (citing 42 U.S.C. § 1243). Title III offers injunctive relief against private operators of "specified public transportation," including buses. *See Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 126–27 (citing 42 U.S.C. § 12181 (defining "specified public transportation")).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA or the Rehabilitation Act, a plaintiff must allege the following: "(1) she is an individual with a disability under the Act; (2) she is 'otherwise qualified' to participate in or receive the benefit of the entity's services, programs, or activities, i.e., she meets the essential eligibility requirements of the entity, with or without reasonable accommodation; (3) she was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of her disability; and (4) the entity is a public entity (for the ADA claim) or receives federal financial assistance (for the Rehabilitation Act claim)." *Pilling v. Bay Area Rapid Transit*, 881 F. Supp. 2d 1152, 1158 (N.D. Cal. 2012) (quoting *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999)).

The term "disability" means the following: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see Pilling*, 881 F. Supp. 2d at 1159 n.8.[2]

"Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City and Cty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds*, 135 S. Ct. 1765 (2015).

To state a claim under Title III of the ADA, "a plaintiff must allege that a private entity discriminated against him on the basis of his disability in places of public accommodation." *Nelson v. Schwarzenegger*, No. 09-CV-04937-JW, 2010 WL 890028, at *1 (N.D. Cal. Mar. 8, 2010).

First, the court cannot tell from the complaints whether Ms. Thompson has a disability. To state a claim, she must plead that she has a disability within the meaning of the ADA. A caveat is that the anti-retaliation provisions of Title II, set forth in 28 C.F.R. § 35.134, provide that a nondisabled person who has been retaliated against for attempting to protect the rights of the disabled has standing to sue under Title II of the ADA. *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 827–28 (9th Cir. 2009). But retaliation is not alleged and is not evidently an issue.

Second, Ms. Thompson says that she was injured on a bus, but she does not specify who operated the bus. She sued Dennis Herrera, the City Attorney; possibly she rode a bus operated by the San Francisco Municipal Transportation Agency. She needs to specify the local-government agency to plead a claim. *See* 42 U.S.C. § 12131(1)(A) & (B) (a "public entity" is a covered defendant under the ADA and includes any local government or any department, agency, special-purpose district, or other instrumentality of a local government).

Third, Ms. Thompson pleads injury to her ankle but does not plead facts showing discrimination.

---

[2] Sections 12101 and 12102, including the definition of "disability" in § 12102(1), are general provisions, applicable to all titles of the ADA. *See* 42 U.S.C. §§ 12101–12102 ("the purpose of this chapter"; "as used in this chapter"); *see Widomski v. SUNY at Orange*, 748 F.3d 471, 474 (9th Cir. 2014).

<pre>                                                                         Case 3:17-cv-05141-WHO   Document 13   Filed 10/06/17   Page 6 of 8</pre>

1  "42 U.S.C. § 12142 identifies certain practices by public-transportation providers that are
2  considered discriminatory." *Midgett v. Tri-County Metro. Transp. Dist. of Or.*, 254 F.3d 846, 849
3  (9th Cir. 2001). "In particular, it is discriminatory if a public entity that operates a fixed route
4  system[8] purchases a bus that is 'not readily accessible to and usable by . . . individuals who use
5  wheelchairs.'" *Id.* (quoting 42 U.S.C. § 12142(a)). "Moreover, the ADA deems it discriminatory
6  for a public entity operating a fixed-route system to provide disabled individuals with services that
7  are inferior to those provided to the nondisabled." *Id.* (citing 42 U.S.C. § 12143(a)).

8  Once a public entity purchases accessible vehicles, ADA regulations require it to "establish a
9  system of regular and frequent maintenance checks of lifts sufficient to determine if they are
10 operative." 49 C.F.R. § 37.163(b). Similarly, 49 C.F.R. § 37.161(a) requires both public and
11 private entities to "maintain in operative condition" accessibility features including "lifts and other
12 means of access to vehicles . . . ." "Accessibility features shall be repaired promptly if they
13 are damaged or out of order . . ., [and] the entity shall take reasonable steps to accommodate
14 individuals with disabilities who would otherwise use the feature." 49 C.F.R. § 37.161(b).
15 Nevertheless, "[t]he regulations implementing the ADA do not contemplate perfect service for
16 wheelchair-using bus commuters."[9] *Midgett*, 254 F.3d at 849. "Under certain circumstances,
17 49 C.F.R. § 37.163 permits buses with inoperative lifts . . . to remain in service for up to three
18 days after the problem is discovered, and § 37.161(c) establishes that isolated or temporary
19 problems caused by lift malfunctions are not violations of the ADA." *Id.* at 849–50.

20 Even construed liberally, Ms. Thompson does not necessarily allege that the ramp
21 malfunctioned. Even if she did, she did not (for example) allege facts showing the entity
22 responsible for operating the bus failed to adequately maintain the lift. *See Lee v. Santa Clara*
23 *Valley Transp. Auth.*, No. 15-CV-05338-HRL, 2016 WL 6427880, at *3 (N.D. Cal. Oct. 31, 2016).

---

[8] A fixed-route system is "a system of providing designated public transportation on which a vehicle is operated along a prescribed route according to a fixed schedule." 42 U.S.C. § 12141(3).

[9] Ms. Thompson may not use a wheelchair. Public and private entities (subject to some exceptions) also "shall permit individuals with disabilities who do not use wheelchairs, including standees, to use a vehicle's lift or ramp to enter the vehicle." 49 C.F.R. § 37.165(g).

<pre>United States District Court
Northern District of California</pre>

<pre>ORDER; REPORT AND RECOMMENDATION – Nos. 17-cv-05141-LB and 17-cv-05163-LB                  6</pre>

Also, as pled, the one-time incident does not establish an ADA claim. *See id.* (the plaintiff's wheelchair flipped over, allegedly because the ramp deployed to the street (not the sidewalk) was too steep; a claim of a one-time improper deployment does not state a claim). *Lee* cites other cases that support this conclusion. *Id.* (citing *Midgett*, 254 F.3d at 849 (no claim stated based on evidence of several incidents when bus wheelchair lifts malfunctioned, five affidavits of other bus users who described their experience with defective lifts, and one failure to properly deploy the ramp) and *Hulihan v. Reg'l Transp. Comm'n of S. Nev.*, No. 09-CV-01096-ECR, 2012 WL 2060955, at *1 (D. Nev. June 7, 2012) (no ADA violation based on a one-time missed pickup by the defendant paratransit bus service and one failure to secure the wheelchair), *affirmed*, 582 F. App'x 727 (9th Cir. 2014)).

Ms. Thompson also does not allege facts to support a claim that the wheelchair lift did not comply with the ADA as designed or constructed. 49 C.F.R. § 38.23 sets forth requirements for wheelchair lifts on buses: for example, wheelchair lifts must be designed to withstand a load of 600 pounds and have controls allowing "reversal of the lift operation sequence, such as raising or lowering a platform that is part way down, without allowing an occupied platform to fold or retract into stowed position." A "lift platform shall be equipped with barriers to prevent any of the wheels of a wheelchair or mobility aid from rolling off the platform during its operation." *Id.* at § 38.23(b)(5). A bus may be equipped with a folding or telescoping ramp so long as it otherwise complies with the structural requirements, such as the requirement that it "have barriers at least 2 inches high to prevent mobility aid wheels from slipping off." *Id.* at § 38.23(c)(4).

Not only does Ms. Thomson not allege facts that the wheelchair lift did not comply with structural requirements for wheelchair lifts, but also, her allegation — that there are stationary bars on the sides of the wheelchair lift[10] — suggests that the lift platform and ramp have barriers to keep a wheelchair from slipping or rolling off, which is a structural requirement. *See id.* § 38.23(b)(5), (c)(4). In any event, to state a claim, Ms. Thompson must allege facts of a discriminatory practice.

---

[10] *See* Compl. – ECF No. 1 at 1 in *Thompson v. Herrera*, No. 17-CV-05163.

## CONCLUSION

The court directs the Clerk to reassign both cases to a district judge and recommends that the newly assigned judge dismiss the complaints with leave to amend.

Any party may serve and file specific written objections to this recommendation within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); Civ. L.R. 72-3. Failure to file written objections may waive the right to appeal the district court's order.

**IT IS SO ORDERED AND RECOMMENDED.**

Dated: October 6, 2017

LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY THOMPSON,<br><br>  Plaintiff,<br><br>  v.<br><br>DENNIS HERRERA,<br><br>  Defendant. | Case No. 17-cv-05843-DMR<br><br>**REQUEST FOR REASSIGNMENT TO DISTRICT JUDGE AND REPORT AND RECOMMENDATION TO DISMISS COMPLAINT WITH LEAVE TO AMEND** |

Pro se Plaintiff Tracy Thompson filed a Complaint [Docket No. 1] and Application to Proceed *In Forma Pauperis* ("IFP Application") [Docket No. 2] on October 10, 2017. On November 1, 2017, Ms. Thompson declined to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). [Docket No. 5]. Therefore, the undersigned issues this Report and Recommendation and requests that this case be reassigned to a district judge for final disposition, with the recommendation that the complaint be dismissed with leave to amend.

**I.   BACKGROUND**

This is Ms. Thompson's third lawsuit against Dennis Herrera, the City Attorney of San Francisco, alleging that she injured her ankle on a wheelchair lift on a bus and that buses need safer wheelchair lifts. *See Thompson v. Herrera*, Case No. 17-cv-5141-LB ("*Thompson I*"); *Thompson v. Herrera*, Case No. 17-cv-5163-LB ("*Thompson II*"). *Thompson I* and *II* are both pending before Judge Orrick. *See Thompson v. Herrera*, Case No. 17-cv-5163-WHO.

In *Thompson I*, Ms. Thompson alleged that wheelchair lifts needed to be federally mandated because she sustained an ankle injury on a wheelchair lift on a bus. Because the allegations in *Thompson I* are sparse, the undersigned sets forth all the allegations in that complaint:

> Wheelchair lifts need to be federally mandated. The reason is they smashed Tracey N. Thompson's foot, back of ankle, and injured her leg's tendon. She went to the emergency room and got six stitches and went through a lot of pain.
>
> The wheelchair lifts have two yellow bars on each side which do not move. They stay stationary and trap the person into three moving shelves of strong metal on the buses moving floor. It then traps the foot and ankle inside a four foot long razor sharp blade which folds over the foot.
>
> The bus wheelchair lifts need to be federally mandated. They can hurt a person' leg (tendon) really bad. And cause a deep severe laceration.

*See* Compl. [Docket No. 1] in *Thompson I*.

In *Thompson II*, Ms. Thompson appeared to describe the same incident with the wheelchair lift pleaded in *Thompson I*. The entirety of the allegations in *Thompson II* are as follows:

> Tracey N. Thompson; experienced a horrible personal injury [incident]. A wheelchair lift flapped into the back of her left ankle. Ambulance Report carried her to Emergency Room. Bus driver told her it['s] ok to ride the ramp up onto the bus. Then it collapsed and folded three ways over her foot and ankle. Pictures of the wheelchair lift available on request. It was a painful experience for Tracey. She had six stiches in her left ankle. Bent tendon -- a lot of pain.

*See* Compl. [Docket No. 1] in *Thompson II*.

In the current complaint, which is entitled "Breach of Contract with Dennis Herrera," Ms. Thompson describes the same incident with the wheelchair lift pleaded in *Thompson I* and *II*. Ms. Thompson asserts a breach of contract claim against Herrera. Although unclear, it appears that Ms. Thompson may also be alleging a breach of contract claim, against Rebecca "Baers," a new defendant. Bers, whose name Plaintiff incorrectly spelled as "Baers," is an attorney with the San Francisco City Attorney's Office. *See* http://members.calbar.ca.gov/fal/Member/Detail/287111 (last accessed on November 21, 2017). The allegations in the complaint are as follows:

> The Breach of Contract happened in the City of San Francisco, State of California over a bus injury on Tracey Thompson's left foot/leg. The wheelchair lift collapsed in and over and cut into her back of her ankle. She went to the emergency room at St. Mary's Hospital. The nurse took a photograph of her severe laceration with a camera. The nurse gave Tracey Thompson six stitches. The two federal employees forgot to follow up with legal remedies for her injurey

2

> [sic]. There [sic] employee, Federal, names are Dennis Herrera and Rebecca Baers. Additional information = Rebecca Baers [sic] State Bar # 28711 and Dennis Herrera State Bar # 139669. All buses need new safer, (safe); wheelchair lifts. The closures presently cut your foot off - and cut into foot.

*See* Compl. [Docket No. 1].

## II.   DISCUSSION

### A.   IFP Application

Having evaluated Ms. Thompson's financial affidavit, the undersigned finds that Ms. Thompson has satisfied the economic eligibility requirement of 28 U.S.C. § 1915(a) and therefore recommends that the court grant the IFP Application.

### B.   Review of Complaint

In reviewing an application to proceed *in forma pauperis*, courts may dismiss a case if the party applying for *in forma pauperis* status files a frivolous action or fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B).  To make the determination under 28 U.S.C. § 1915(e)(2)(B), courts assess whether there is an arguable factual and legal basis for the asserted wrong, "however inartfully pleaded." *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984).  Courts have the authority to dismiss complaints founded on "wholly fanciful" factual allegations for lack of subject matter jurisdiction.  *Id.* at 1228.  A court can also dismiss a complaint where it is based solely on conclusory statements, naked assertions without any factual basis, or allegations that are not plausible on their face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see also Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam).

Although pro se pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a complaint should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007); *see also* Fed. R. Civ. P. 12(b)(6).  "[A] district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quotations omitted).

### C. Federal Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and a "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citations omitted). In most cases, original federal subject matter jurisdiction is either based on federal question jurisdiction or diversity jurisdiction. Neither basis is present here.

Federal subject matter jurisdiction under 28 U.S.C. § 1331 requires a civil action to "aris[e] under the Constitution, laws, or treaties of the United States." Here, even liberally construing her complaint, Ms. Thompson has not asserted any claims based on federal law. While unclear, it appears that Ms. Thompson believes federal subject matter jurisdiction exists because she named two "federal" employees in her complaint, i.e., Herrera and Bers. This is incorrect. First, Herrera and Bers are state, not federal, employees. According to the California State Bar, they are employed by the San Francisco City Attorney's Office. *See* http://members.calbar.ca.gov/fal/Member/Detail/287111 (last accessed on November 30, 2017); http://members.calbar.ca.gov/fal/Member/Detail/139669 (last accessed on November 30, 2017). Second, even if Herrera and Bers were federal employees, their status would not confer federal jurisdiction. The nature of the claim pleaded in the complaint determines whether federal jurisdiction exists. Here, Ms. Thompson states that her claim is for breach of contract. A breach of contract claim is generally a creation of state law and does not "arise under the Constitution, law, or a treaty of the United States." *See, e.g., Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 840 (9th Cir. 2004) (finding breach of contract claim insufficient to confer federal jurisdiction because it was "clearly a creature of state law"); *Adelt v. Richmond Sch. Dist.*, 439 F.2d 718, 718 (9th Cir. 1971) (dismissing complaint without leave to amend for lack of federal jurisdiction; no federal question jurisdiction existed where the claim was "simply one for breach of contract"). There are no facts in the complaint to support that Ms. Thompson's breach of contract claim arises under a federal statute or law.

Federal diversity jurisdiction requires (1) complete diversity of citizenship between the parties—"each defendant must be a citizen of a different state from each plaintiff," *Diaz v. Davis*

1  *(In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008), and (2) a claim for
2  damages in excess of $75,000.00.  28 U.S.C. § 1332(a).  None of these requirements are met here.
3  The allegations in the complaint strongly suggest that all parties are citizens of the same state
4  (California) and are non-diverse.  Additionally, there are no allegations that Ms. Thompson
5  suffered damages in excess of $75,000.00.
6        In conclusion, the undersigned finds that Ms. Thompson's complaint does not satisfy 28
7  U.S.C. § 1915(e)(2)(B) review because it fails to establish a basis for federal subject matter
8  jurisdiction.
9        In addition, while the undersigned recommends dismissing Ms. Thompson's complaint on
10 the basis of its jurisdictional pleading defects, the breach of contract claim also fails on the merits.
11 Under California law, assuming it applies here, the elements of a breach contract claim are: "(1)
12 the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3)
13 breach by the defendant; and (4) damages."  *See, e.g., Rockridge Trust v. Wells Fargo, N.A.*, 985
14 F. Supp. 2d 1110, 1141–42 (N.D. Cal. 2013).  Ms. Thompson's complaint fails to allege any facts
15 to support a breach of contract claim.  For example, there are no allegations that there was a
16 contract between Ms. Thompson and the defendants, that Ms. Thompson performed some act
17 required by the contract, and that the defendants breached the contract in some manner.  The
18 allegation that comes closest to describing a breach is that Herrera and Bers "forgot to follow up
19 with legal remedies" for her injury.  This allegation is insufficient to support a claim for breach of
20 contract.  It is vague as to what "legal remedies" Herrera and Bers were required to provide Ms.
21 Thompson and why.  Nor does it state or suggest that Herrera and Bers breached any contract.

## III. CONCLUSION

23       For the reasons above, the undersigned recommends that Ms. Thompson's complaint be
24 dismissed with leave to amend to remedy the deficiencies noted in this order.  Any party may file
25 objections to this report and recommendation with the district judge within 14 days after being
26 served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Cal. Civ. L.R. 72-2.
27       The undersigned refers Ms. Thompson to the section "Representing Yourself" on the
28 Court's website, located at http://cand.uscourts.gov/proselitigants, as well as the Court's Legal

Help Centers for unrepresented parties.  In San Francisco, the Legal Help Center is located on the 15th Floor, Room 2796, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco.  In Oakland, the Legal Help Center is located on the 4th Floor, Room 470S, of the United States Courthouse, 1301 Clay Street, Oakland.

**IT IS SO ORDERED.**

Dated: November 30, 2017



_____
DONNA M. RYU
United States Magistrate Judge